# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

HANNAH JOY BETHELL,

    Plaintiff,

    v.

FRANK BISIGNANO, Commissioner of Social Security[1]

    Defendant.

_____/

Case No.  1:25-cv-00502-EGC

**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

(Doc. 1)

## I.    INTRODUCTION

Plaintiff Hannah Joy Bethell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Erin E. Guy Castillo, United States Magistrate Judge.[2]

## II.    BACKGROUND

Plaintiff was born in 1989.  (Administrative Record ("AR") 265).  She obtained her GED. (AR 64).  Plaintiff filed an application for DIB and SSI, alleging she became disabled on January 1,

---

[1] On May 7, 2025, Frank Bisignano was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 8).

2016.  (AR 265–75).

**A.    Relevant Evidence of Record[3]**

On March 19, 2021, after performing a mental status examination, psychological consultative examiner Charles DeBattista, MD[4] issued a report.  (AR 1990–95).  That report reflects Dr. DeBattista's opinion that Plaintiff's ability to maintain concentration and attention, persistence and pace is "moderately impaired." (AR 1992).  Dr. DeBattista also opined that Plaintiff's ability to associate with day-to-day work activity, including attendance and safety, as well as to maintain regular attendance in the workplace and perform work activities on a consistent basis are "moderately impaired."  (*Id.*)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 5, 2019, and again on reconsideration on September 27, 2019.  (AR 108–27).  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 148).  The ALJ conducted a hearing on January 24, 2024.  (AR 2025–62).  Plaintiff appeared at the hearing with her attorney and testified as to her alleged disabling conditions and work history.  (AR 2029–56).

A Vocational Expert ("VE") also testified at the hearing.  (AR 2056–61).  In relevant part, the VE testified that being off task four percent of the time would be "pretty insignificant" and not preclusive of competitive work, while being off task twenty percent of a workday would be a "big difference" and preclusive of competitive work.  (AR 2059).

**C.    The ALJ's Decision**

In a decision dated April 3, 2024, the ALJ found that Plaintiff was not disabled.  (AR 2000–15).  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 2003–15).  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since February 27, 2019.  (AR 2003).  At step two, the ALJ found Plaintiff's following impairments to be severe: HIV, obesity, major depressive disorder, posttraumatic stress disorder (PTSD), and social

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[4] While the ALJ's decision refers to this doctor as "Dr. Battisa," (AR 2011), the record reflects his name is Dr. DeBattista, (AR 1990).  Therefore, the Court's order will refer to this doctor as Dr. DeBattista.

2

anxiety disorder. (AR 2003–04). The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 2004–07).

The ALJ assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the following RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except the claimant should avoid hazards such as unprotected heights and moving machinery. The claimant could understand, remember and carry out simple work instructions and have occasional interaction with coworkers. The claimant should have no interaction with the public except for incidental and superficial interaction. The claimant can deal with occasional changes in a routine work environment. The claimant would be off task 4% of the month.

(AR 2007; *see also id.* 2007–13). Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record." (AR 2008).

The ALJ then determined that Plaintiff could not perform her past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five). (AR 2013–15). In making this determination, the ALJ relied on the VE's answers to a series of hypothetical questions the ALJ posed to the VE during the hearing. (AR 2014–15). The VE testified that a person with the RFC specified above could perform the jobs of price marker, routing clerk, or housekeeping cleaner. (AR 2057–59). The ALJ ultimately concluded Plaintiff was not disabled at any time after February 27, 2019, the alleged onset date. (AR 2015).

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 4, 2022. (AR 2–7). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of

4

the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*,

533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.      DISCUSSION**

Plaintiff asserts three claims of error: the ALJ erred by (1) failing to comply with a prior remand order from the Appeals Council, (2) formulating an RFC that is unsupported by substantial evidence due to a failure to properly evaluate the medical opinions of record, and (3) failing to either include work-related limitations consistent with Plaintiff's limitations or offer clear and convincing evidence for rejecting Plaintiff's subjective complaints. (*See* Doc. 15 at 4–16). The Commissioner counters that the ALJ (1) complied with the Appeals Council's remand order, (2) reasonably found the opinion of Plaintiff's primary care physician unpersuasive, and (3) formulated an RFC supported by substantial evidence. (Doc. 19 at 2–12). The Court agrees with Plaintiff that the ALJ's evaluation of a medical opinion of record is not supported by substantial evidence.[6]

**A.    Legal Standard**

Plaintiff's claim is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians'

---

[6] Because further proceedings will necessitate the re-evaluation of the evidence as a whole, *see infra*, the Court does not reach the issue of the ALJ's treatment of Plaintiff's subjective symptoms or the ALJ's compliance with the Appeals Council's remand order. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.  *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* at 792 (citing 20 C.F.R. § 404.1520c(b)).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3).  Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v).  However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Id.* at 792.  "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id.* (quoting § 404.1520c(b)(3)).  "In that case, the ALJ 'will

articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in their decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. DeBattista opinions.

**B.    Analysis**

Starting with the medical opinion at issue, the record reflects that consultative examiner Dr. DeBattista opined that Plaintiff's ability to maintain concentration and attention, persistence and pace is "moderately impaired." (AR 1992). Dr. DeBattista also opined that Plaintiff's ability to associate with day-to-day work activity, including attendance and safety, as well as to maintain regular attendance in the workplace and perform work activities on a consistent basis are "moderately impaired." The ALJ found Dr. DeBattista's opinions only "minimally persuasive" for several reasons, each of which are not supported by substantial evidence.

First, the ALJ stated that Dr. DeBattista's opinion was "only minimally persuasive as it is based upon a one-time examination of the claimant's functioning." (AR 2011). Defendant notably does not attempt to defend this reason. (*See* Doc. 19 at 2–5). The Court agrees with Plaintiff that it was unreasonable for the ALJ to reject Dr. DeBattista's opinion because he only saw Plaintiff one time. If this reason was enough, an ALJ would be free to reject every consultative examining doctor's opinion because they generally only see claimants once. This Court agrees with other courts that have rejected similar reasoning. *See*, *e.g.*, *Daniel H. v. Comm'r of Soc. Sec.*, C19-6147-BAT, 2020 WL 7054308 at *2 (W.D. Wash. Dec. 2, 2020); *Amber L. B. v. Comm'r of Soc. Sec.*, No. 2:21-CV-01358-JRC, 2022 WL 1134881, at *5 (W.D. Wash. Apr. 15, 2022). *R.K. v. Kijakazi*, No. 21-CV-01764-VKD, 2023 WL 2393783, at *7 (N.D. Cal. Mar. 6, 2023) ("The fact that [the consultative examiner] conducted a one-time examination is not, in itself, a legitimate basis to discount an opinion; that "rationale would render all examining opinions superfluous, and is contrary to the requirement that the ALJ consider all relevant evidence, including medical opinions of examining doctors.'" (quoting *Brown v. Berryhill*, No. 17-cv-02834-JCS, 2018 WL 4700348, at *17 (N.D. Cal.

Sept. 29, 2018))).

Second, the ALJ stated that Dr. DeBattista's "opinion as to the claimant's ability to associate with day-to-day work activity, including attendance and safety, and ability to maintain regular attendance in the workplace and perform work activities on a consistent basis is not persuasive, as the claimant has only moderate limitation in adaptation or managing oneself." (AR 2011).  And more broadly, the ALJ asserted that "[n]otably, the psychologist noted no more than moderate limitations in any area." (*Id.*).  But in formulating an RFC, the ALJ must account for *all* of a claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(1); *Valentine*, 574 F.3d 690 (an RFC that "fails to take into account a claimant's limitations is defective").  Therefore, an ALJ errs where, as here, an ALJ provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012).  Indeed, it is not clear how Dr. DeBattista's opinion that Plaintiff was only moderately impaired as Plaintiff's to ability to associate with day-to-day work activity, including attendance and safety, as well as her ability to maintain regular attendance in the work place and perform work activities on a consistent basis is inconsistent with the ALJ's assertion that Plaintiff was only "moderately limited" as to adapting and managing herself.  Nor is it clear the relevance of the ALJ's assertion that Dr. DeBattista only assessed moderate impairments.  The Court cannot find that these reasons to reject Dr. DeBattista's opinion are supported by substantial evidence.

Finally, the ALJ asserts that "Plaintiff was cooperative and well groomed, made good eye contact and had no history of avoiding hazards." (AR 2011).  While the Court assumes this statement is intended to go to the issue of consistency, the ALJ does not draw a logical bridge between the evidence cited and the medical opinion being evaluated.  *See Crystal O. v. Kijakazi*, No. 3:20-CV-06011-TLF, 2021 WL 5774395, at *2 (W.D. Wash. Dec. 3, 2021) ("the ALJ must build an accurate and logical bridge from the evidence to their conclusions"); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (observing that an ALJ must give a "clear statement of the agency's reasoning"); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (An ALJ errs when he or she "merely states" that facts "point toward an adverse conclusion" yet "makes no effort to relate any of

these" facts to "the specific medical opinions and findings he rejects."). Without more, the Court this reason does not provide substantial evidence to support the ALJ's discrediting of Dr. Battista's opinion.

Therefore, the Court finds that the ALJ erred in failing to provide sufficient reasons, supported by substantial evidence, for discounting Dr. DeBattista's opinion.

**C.    Harmlessness Review**

The Court must now consider whether the ALJ's error was harmless. *Molina*, 674 F.3d at 1115. Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Defendant argues that any error in the ALJ's evaluation of Dr. DeBattista is harmless because the ALJ incorporated all of Dr. DeBattista's assessed limits into the RFC even though the ALJ rejected parts of Dr. DeBattista's opinion. (Doc. 19 at 3). The Court disagrees.

While it is true that the ALJ did incorporate a limitation as to time off task, that limitation was explicitly to account for Plaintiff's alleged physical limitations associated with her epilepsy and HIV. (AR 2010 ("To the extent that [Plaintiff] experiences brief seizures up to a few minutes with two hours recovery time once every month or two, the undersigned finds that 4% off task sufficiently addresses the reported symptoms. Limitation to light exertion will sufficiently accommodate the claimant's fatigue from epilepsy and symptoms related to HIV and treatment.")). The ALJ explicitly rejected Dr. DeBattista's "opinion as to the claimant's ability to associate with day-to-day work activity, including attendance and safety, and ability to maintain regular attendance in the workplace and perform work activities on a consistent basis" as it related to Plaintiff's psychological and mental limitations. The Court cannot conclude that the error is harmless because if the ALJ had credited Dr. DeBattista's opinion as to Plaintiff's moderate impairments that would have potentially resulted in greater functional limitations assessed and reflected in the RFC, which may have in turn affected the ultimate disability determination in light of the VE's testimony that while a limitation to off task

four percent of the time was "pretty insignificant" and would allow Plaintiff to perform the identified jobs in the national economy, if Plaintiff were off task 20% of the time, Plaintiff would be unable to perform any work.  (AR 2059).[7]

In sum, the Court cannot say that the error was not "inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115.

**D.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits.  Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled.  *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds that remand for further proceedings is warranted.  *See*, *e.g.*, *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further findings evaluating the credibility of [the claimant's] subjective complaints").  On remand, the Commissioner shall reevaluate the evidence as it relates to Plaintiff's RFC.

**V.    CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Hannah Joy Bethell and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  __**June 2, 2026**__

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] This is not to say that the disability determination will or should be different regarding the period at issue--only that the Court cannot determine the outcome would remain the same upon a correct evaluation of the record.